ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| STEVEN K. MANAS, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-885-Y |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I.   STATEMENT OF THE CASE

Plaintiff Steven K. Manas ("Manas") filed this action, pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code, seeking judicial review of a final decision of

the Commissioner of the Social Security Administration ("Commissioner") denying his claims

for a period of disability and disability insurance benefits ("DIB") under Title II and

supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").

On or about December 10, 2009, Manas filed applications for DIB and SSI, alleging that

his disability began on November 28, 2009.   (Transcript ("Tr.") 12, 102-107.)   After his

applications for benefits were denied initially and on reconsideration, Manas requested a hearing

1

before an administrative law judge ("ALJ").  (Tr. 12, 43-50, 55-63.)  The ALJ held a hearing on February 17, 2011, and he issued an unfavorable decision on July 21, 2011.  (Tr. 9-19, 24-38.) On November 16, 2012, the Appeals Council denied Manas' request for review, leaving the ALJ's decision as the final decision of the Commissioner in his case.  (Tr. 1-4.)  Manas subsequently filed this civil action seeking review of the ALJ's decision.

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI."  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920 (2009).  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v.*

*Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to

3

determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*,

837 F.2d at 1383.

## III.   ISSUES

In his brief, Manas presents the following issues:

1.  Whether the ALJ erred in failing to include all of Manas' physical functional limitations in the residual functional capacity ("RFC") determination;

2.  Whether the ALJ erred at Step Five by applying the Medical-Vocational Guidelines ("GRIDS" or "grid rules") in determining that Manas was not disabled.

(Plaintiff's Brief ("Pl.'s Br.") at 1, 3-6.)

## IV.   ALJ DECISION

In his July 21, 2011 decision, the ALJ found that Manas had not engaged in any

substantial gainful activity since November 28, 2009, his alleged onset date of disability, and that

he met the disability insured status requirements of the SSA through December 31, 2013.   (Tr.

14.)  At Step Two, the ALJ held that Manas suffered from the following severe impairments:

"insulin dependent diabetes mellitus, peripheral neuropathy in the lower extremities and

degenerative disc disease of the lumbar spine." (Tr. 14.)  At Step Three, the ALJ opined that

Manas did not suffer from an impairment or combination of impairments that met or equaled any

section in the Listing. (Tr. 16.)  As to Manas' RFC, the ALJ found that Manas had the ability to

perform the full range of sedentary work. (Tr. 16.)  Based upon this RFC assessment, the ALJ

opined that Manas was unable to perform his past relevant work. (Tr. 17.)  However, based upon

Manas' age, education, work experience, and RFC in conjunction with the GRIDS, the ALJ

found that there were jobs that existed in significant numbers in the national economy that

4

Manas could perform. (Tr. 18.) Consequently, the ALJ found that Manas was not disabled. (Tr. 18.)

## V.   DISCUSSION

### A.   RFC Determination and Functional Limitations

Manas argues that the ALJ failed to consider all of his functional limitations in the RFC determination. (Pl.'s Br. at 3-5, Plaintiff's Reply ("Pl.'s Reply") at 1-3.) Specifically, Manas, claims that the ALJ ignored the opinion of Ade Adedokun, D.O. ("Dr. Adedokun"), who advised that Manas had evidence of diabetic peripheral neuropathy "affecting mostly bilateral lower extremities" and restricted Manas "to no greater than frequent reaching, handling and fingering and only occasional feeling." (Pl.'s Br. at 4.) Manas argues, citing to Social Security Ruling ("SSR") 96-6p, that "any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." (Pl.'s Br. at 4.) Manas also claims, citing to SSR 83-14, that "a limitation to unskilled sedentary work with an additional loss of bilateral manual dexterity warrants a conclusion that the individual is disabled." (Pl.'s Br. at 5.) Manas argues that Dr. Adedokun's opinion that Manas' peripheral neuropathy primarily affected the lower extremities "does not rule out an effect upon Plaintiff's ability to use his upper extremities." (Pl.'s Br. at 5.) Manas asserts that the ALJ erred in stating that he took Dr. Adedokun's opinion "under advisement" but never indicated what weight he gave to such an opinion or provided "any basis for rejecting Dr. Adedokun's conclusions as to Plaintiff's specific functional limitations." (Pl.'s Br. at 5.)

RFC is what an individual can still do despite his limitations.[1]  SSR 96-8p, 1996 WL

374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do

sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see*

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-

hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function

assessment, with both exertional and nonexertional factors to be considered, and is based upon

all of the relevant evidence in the case record.[2]  *Id.* at 3-6.  The responsibility for determining a

claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and

continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184,

at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and

the extent to which these symptoms can be reasonably accepted as consistent with objective

medical evidence and other evidence.  *See* 20 C.F.R. § 416.1529, 416.929; SSR 96-7p, 1996 WL

374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.  The ALJ must also consider limitations

and restrictions imposed by all of an individual's impairments, even impairments that are not

severe.  *Id.*  The ALJ is permitted to draw reasonable inferences from the evidence in making his

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four.  *Id.*

[2] Exertional capacity addresses an individual's ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling: SSR 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities.  *Id.*  Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations.  *Id.* at *6.

decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute. *See,* e.g., SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

In this case, the ALJ, as stated above, found that Manas suffered from the severe impairments of diabetes, peripheral neuropathy in the lower extremities, and degenerative disc disease of the lumbar spine. (Tr. 14.) In addition, the ALJ found that Manas has the RFC to perform the full range of sedentary work.[3] (Tr. 16.) In making these determinations, the ALJ reviewed, *inter alia*, the following evidence: (1) Manas' testimony that he could not "return to

---

[3] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. SSR 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id. at* *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*

the workforce because he had painful/tingling lower extremities and sores on his feet" and "his feet tingled and felt like ants all over them if he was up for 45 minutes to an hour" (Tr. 14; *see* Tr. 29-32, 293); (2) MRIs taken in 2010 that showed "degenerative disc and facet disease with resultant grade I retrolisthesis and bilateral neural foraminal stenosis at L5-S1 and L4-L5 with degenerative disc and facet disease without stenosis or impingement and L3-l4 had slight posterior disc bulge without stenosis or impingement" (Tr. 15; *see* Tr. 295-96, 302, 319); (3) evidence that Manas had insulin dependent diabetes mellitus but that he was not "always medication compliant" (Tr. 15); (4) treatment notes showing that Manas had an epidural steroid injection in his back in January 2011 (Tr. 15; *see* Tr. 357-58; (5) treatment notes showing that in February 2011 Manas had a caudal catheter epidural steroid injection to the right side at L5-S1 and reported a decrease in pain rating from 8/10 to 1/10 (Tr. 15; *see* Tr. 383-84); (6) treatment notes indicating that in April 2011 Manas underwent a lumbar discogram that (a) was normal with no increase in pain at L3-L4, (b) revealed an irregular disk but no increase in pain at L4-L5, and (c) revealed a ruptured disk at L5-S1 with no increase in pain (Tr. 15; *see* Tr. 377-78); (7) examination notes dates May 2, 2011 showing that Manas had: (a) "tenderness to palpation in the sacroiliac region with compression test," (b) more pain on the right with decreased sensation "diffusely to the right lower extremity and mildly on the left lower extremity in the L5 distribution," and (c) muscle strength of 5/5 in the bilateral lower extremities, L4, L5, and S1 distributions (Tr. 15; *see* Tr. 375); (8) a Case Assessment Form dated March 26, 2010 in which State Agency Medical Consultant ("SAMC") Randal Reid, M.D. ("SAMC Reid") opined that Manas did not have any severe impairments because, inter alia, he expected Manas to be asymptomatic with "medication compliance" (Tr. 17; *see* Tr. 214); and (9) a Case Assessment

8

Form dated May 25, 2010 in which SAMC Terry Collier, M.D. ("SAMC Collier") confirmed the

assessment of SAMC Reid on March 26, 2010 (Tr. 17; *see* Tr. 274).[4]

As to Dr. Adedokun's opinions, the ALJ stated:

> At the request of Disability Determinations Section (Texas), the claimant
> had a physical examination on March 28, 2011. He was alert and oriented and in
> no distress. He had normal gait. He was able to walk on his heels and tandem,
> but not walk on his tiptoes due to pain. There was no joint swelling or instability.
> There was no edema. He had normal movements of the musculoskeletal system.
> He had 5/5 manual muscle testing, but sensation was decreased distally. The
> consultative examiner noted the claimant had diabetic peripheral neuropathy
> affecting mostly the lower extremities, but otherwise, could occasionally lift/carry
> up to 50 pounds and up to 10 pounds frequently; sit a total of 8 hours in an eight-
> hour workday; stand/walk six hours in an eight-hour workday; occasionally
> balance, stoop, kneel, crouch, crawl, and climb; frequently reach, handle, finger
> and feel; occasionally push/pull and operate foot controls. The Administrative
> Law Judge took this opinion under advisement, but as always, this is an opinion
> reserved solely to the Commissioner.

(Tr. 15 (internal citations omitted).) In addition, the ALJ stated:

> In summary, the claimant has insulin dependent diabetes mellitus with
> diabetic peripheral neuropathy in the lower extremities, more on the right. He has
> degenerative disc disease of the lumbar spine. Although he reported neuropathy
> in the upper extremities, he did not have evidence of major dysfunction of his
> hands, wrists and fingers resulting in an inability to perform fine and gross
> movements effectively. . . .
>
> . . . .
>
> The record contains medical opinions provided by state agency medical
> examiners that are recognized as highly qualified physicians in the evaluation of
> the medical issues in disability claims under the Act. Administrative Law Judges
> are not bound by the findings made by the state agency or other program
> physicians and psychologists, but they may not ignore these opinions (Social
> Security Ruling 96-6p). The undersigned has considered the evidence of record
> as a whole and finds that state agency examiners' assessment-that as long as the
> claimant follows prescribed treatment, his conditions should remain under

---

[4] The Court notes that the ALJ did not discuss the details of the SAMCs Case Assessment Forms in detail
but he did reference such opinions. (Tr. 17.)

control, and this opinion was consistent with the findings of the undersigned
Administrative Law Judge.

(Tr. 16-17.)

In this case, it is clear that the ALJ considered Dr. Adedokun's medical opinion in formulating the RFC determination. (Tr. 15.) The ALJ explicitly discussed Dr. Adedokun's medical opinion in his findings and noted that he "took this opinion under advisement." *Id.* In fact, it appears that the ALJ adopted portions of Dr. Adedokun's opinions in limiting Manas to sedentary work. However, the ALJ, based on the other evidence in the record, chose not to incorporate Dr. Adedokun's limitations relating to Manas' use of his hands and upper extremities. The ALJ explained that he was making such a determination because there was not "evidence of major dysfunction of his hands, wrists and fingers resulting in an inability to perform fine and gross movements effectively." (Tr. 16.) Such a determination is supported by the other evidence in the record, none of which indicates that Manas suffers from the manipulative limitations indicated by Dr. Adedokun. In this case, the ALJ properly discussed the evidence in the record in making his RFC determination, adequately explained the reasoning for such determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Because there is substantial evidence in the record that supports the ALJ's RFC determination, the Court concludes that remand is not required.

As to Manas' claim that the ALJ erred in failing to indicate what weight he assigned to Dr. Adedokun's medical opinion, the Court notes that the regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. §§ 404.1527(b),

10

416.927(b).[5]  Contrary to Manas' claims, the ALJ did, as set forth above, thoroughly analyze Dr. Adedokun's opinion in his decision.  It is obvious from a careful reading of the decision that the ALJ chose to only give weight to those portions of Dr. Adedokun's opinion that were supported by other evidence in the record.  *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.")).   The ALJ was not required to adopt all portions of Dr. Adedokun's, or any other, medical opinion.  *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) ("The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.").

Moreover, even assuming that the ALJ erred in failing to set forth the weight he was giving to Dr. Adedokun's opinion, such error is harmless.  A court will not overturn a procedurally imperfect administrative ruling unless the substantial rights of a party have been prejudiced.  *See Mays v. Brown*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006); *Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997). Manas has failed to show how he was prejudiced as substantial evidence supports the ALJ's decision.

### B.      Consideration of the GRIDS

Manas also argues that, in light "of Dr. Adedokun's finding of significant limitations in Plaintiff's ability to use his hands and fingers, as well as significant postural and environmental

---

[5] The ALJ is entitled to consider treatment history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

limitations, it was improper for the ALJ to use the [grid rules] to direct a conclusion that Plaintiff is not disabled." (Pl.'s Br. at 5.)  When, as here, the Commissioner decides at Step Five that there are other jobs in existence in significant numbers in the national economy that the claimant can perform, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006).  Typically, the Commissioner satisfies this burden in one of two ways. *Id.*; *see Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  The first way is that the Commissioner can receive testimony from a vocational expert or consider similar vocational resource evidence. *Allsbury*, 460 F. Supp. 2d at 721.  The second way is that the "Commissioner can take administrative notice of [the] availability of alternative work by consulting predetermined findings contained" in the GRIDS.[6] *Id.*

However, the GRIDS may not be fully applicable where the nature of a claimant's impairment is nonexertional, such as when a claimant has certain mental, sensory, or skin impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).  The Fifth Circuit has held that the use of the GRIDS is appropriate when a claimant suffers only from exertional impairments or if a claimant's nonexertional impairments do not significantly affect his RFC. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).  When the claimant has a nonexertional factor that limits the range of jobs a claimant can perform, the ALJ cannot rely on the GRIDS and must rely on vocational expert testimony to establish that jobs exist. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994).  *See also Bolton v. Callahan*, 984

---

[6] The GRIDS consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's RFC capacity is determined. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03.  The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *Id.*

F. Supp. 510, 513-14 (N.D. Tex. 1997); *Frazier v. Chater*, 903 F. Supp. 1030, 1034 (N.D. Tex. 1995).

In this case, Manas contends that he has nonexertional impairments that prohibited the ALJ at Step Five from relying on the grid rules to determine he was not disabled. However, as set forth above, the Court has determined that the ALJ did not err in finding that Manas suffered from only exertional impairments. Accordingly, it was proper for the ALJ to rely on the GRIDS at step Five and, thus, remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

### **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 14, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 28, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

14